```
                                              2015 DEC 18 PM 4:01
                                              CLERK U.S. DISTRICT COURT
                                              CENTRAL DIST. OF CALIF.
                                              LOS ANGELES
                                              BY:_____
                                                                    FILED
```

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

October 2015 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR No. 15-CR 15 00701 |
| Plaintiff, | I N D I C T M E N T |
| v. | 18 U.S.C. § 1956(h): Conspiracy to Launder Monetary Instruments; 18 U.S.C. § 1956(a)(3)(B): Laundering of Monetary Instruments; 18 U.S.C. § 2(a): Aiding and Abetting; 18 U.S.C. § 2(b): Causing an Act to be Done; 18 U.S.C. § 982(a)(1): Criminal Forfeiture] |
| JIM SHENG LEE, aka "Jin Sheng Li," aka "Jimmy Lee," JIAN SHENG TAN, aka "Raymond," aka "Raymond Tan," and HUA LEUNG, aka "Hua Dee," aka "Ah Hua," aka "Hua Liang," Defendants. | |

The Grand Jury charges:

COUNT ONE

[18 U.S.C. § 1956(h)]

A.    GENERAL ALLEGATIONS

   1.   At all times material to this Indictment, the following definitions and allegations apply:

        a.   The abbreviation "CS" refers to a confidential source operating under the direction and control of the Federal Bureau of

Investigation ("FBI"), who held himself out as an agent of a criminal enterprise that engaged in drug and arms trafficking, that was in fact an undercover operation of the FBI. The CS further held himself out as someone who needed to conduct, and who himself could conduct, money laundering transactions.

      b.   The abbreviation "UC" refers to a task force officer operating in an undercover capacity under the direction and control of the FBI, who held himself out as being the boss of the CS and a manager in the criminal enterprise described above.

B.    OBJECT OF THE CONSPIRACY

      2.   Beginning on a date unknown and continuing until on or about July 15, 2011, in Los Angeles County, within the Central District of California, and elsewhere, defendants JIM SHENG LEE, also known as ("aka") "Jin Sheng Li," aka "Jimmy Lee" ("LEE"), JIAN SHENG TAN, aka "Raymond," aka "Raymond Tan" ("TAN"), and HUA LEUNG, aka "Hua Dee," aka "Ah Hua," aka "Hua Liang" ("LEUNG"), and others known and unknown to the Grand Jury, conspired and agreed with each other to knowingly and intentionally conduct or attempt to conduct financial transactions, affecting interstate and foreign commerce, believing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, and knowing that the transactions were designed in whole or in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

C.  MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE ACCOMPLISHED

3.  The object of the conspiracy was to be accomplished, in substance, as follows:

a.  Defendants LEE and TAN would make arrangements for money laundering transactions to be conducted.

b.  Defendant LEE would receive cash from the CS, who had represented to defendants LEE, TAN, and LEUNG that the cash was the proceeds of specified unlawful activity.

c.  Defendant LEE would cause cashier's checks to be prepared in exchange for the cash provided by the CS.

d.  Defendant LEE would arrange to have the cashier's checks made out to a fictitious name provided by the CS.

e.  Defendant LEE would provide the fraudulently obtained cashier's checks to the CS.

f.  Defendants LEE, TAN, and LEUNG would receive a fee in return for converting the cash provided by the CS into cashier's checks.

D.  OVERT ACTS

4.  In furtherance of the conspiracy and to accomplish the object of the conspiracy, defendants LEE, TAN, and LEUNG, and others known and unknown to the Grand Jury, committed various overt acts within the Central District of California, and elsewhere, including, but not limited to, the following:

Overt Act No. 1:   On or about October 13, 2009, at a Starbucks located at 17416A Colima Road, Rowland Heights, California ("Rowland Heights Starbucks"), defendant TAN met with the CS to plan money laundering transactions.

3

<u>Overt Act No. 2</u>:   On or about October 13, 2009, at the Rowland Heights Starbucks, the CS told defendant TAN that the cash to be laundered involved proceeds from bank fraud and drug trafficking, and defendant TAN replied that he did not care as long as the money was cash.

<u>Overt Act No. 3</u>:   On or about June 28, 2010, at the Lee's Sandwiches restaurant at the intersection of Muscatel Avenue and Valley Boulevard in Rosemead, California ("Lee's Sandwiches restaurant"), defendant TAN asked the CS how many cashier's checks the CS would like and what name the CS wanted on the checks.

<u>Overt Act No. 4</u>:   On or about June 28, 2010, at the Lee's Sandwiches restaurant, defendant TAN told the CS that everything would be given to defendant LEE, and that defendant LEE would decide whether to count the money at the bank or to count it himself.

<u>Overt Act No. 5</u>:   On or about June 28, 2010, defendant TAN accompanied the CS to a nearby real estate office used by defendant LEE and introduced the CS to defendant LEE.

<u>Overt Act No. 6</u>:   On or about June 28, 2010, at the real estate office used by defendant LEE, defendant LEE told the CS and defendant TAN that he would not dare to ask the CS or defendant TAN the source of the money, adding that he did not need to know that.

<u>Overt Act No. 7</u>:   On or about June 28, 2010, at the real estate office used by defendant LEE, defendant LEE told the CS that when he arrived at the bank with the CS, defendant LEE would ask someone to bring the two cashier's checks first and only then give the person the cash.

<u>Overt Act No. 8</u>:   On or about June 28, 2010, at the real estate office used by defendant LEE, defendant LEE told the CS that

he was concerned about the name of the person that the CS had proposed using on the cashier's check, and the CS instead proposed using a business account name.

Overt Act No. 9: On or about June 28, 2010, at the real estate office used by defendant LEE, defendant LEE told the CS that this kind of criminal behavior is called a conspiracy.

Overt Act No. 10: On or about November 3, 2010, at the Starbucks located at the corner of Rosemead Boulevard and Marshall Street in Rosemead, California ("Rosemead Starbucks"), defendant LEE met with the CS to discuss a money laundering transaction to occur in December.

Overt Act No. 11: On or about November 3, 2010, at the Rosemead Starbucks, defendant LEE told the CS that defendant LEE would have to make four percent on the deal and that his friend would have to make five or six percent.

Overt Act No. 12: On or about November 3, 2010, at the Rosemead Starbucks, defendant LEE and the CS discussed doing a $100,000 money laundering transaction.

Overt Act No. 13: On or about November 10, 2010, at the Rosemead Starbucks, defendants LEE and LEUNG met with the CS to discuss the upcoming money laundering transaction.

Overt Act No. 14: On or about November 10, 2010, at the Rosemead Starbucks, defendant LEE said that he might sometimes give the CS two checks.

Overt Act No. 15: On or about November 10, 2010, at the Rosemead Starbucks, after the CS talked about the importance of "follow through" with respect to the money laundering transaction, defendant LEUNG said that it was very important.

<u>Overt Act No. 16</u>: On or about November 10, 2010, at the Rosemead Starbucks, defendant LEE told the CS to give defendant LEE a different name every month and that defendant LEE wanted the name two days in advance of the transaction.

<u>Overt Act No. 17</u>: On or about November 10, 2010, at the Rosemead Starbucks, defendant LEUNG said that if they did not have a smooth start for their first business, they would rather not do it.

<u>Overt Act No. 18</u>: On or about November 10, 2010, at the Rosemead Starbucks, defendant LEE said that he would go to his bank in advance to prepare the cashier's checks for the CS.

<u>Overt Act No. 19</u>: On or about December 8, 2010, defendant LEE, in a telephone conversation with the CS, agreed to a meeting at the Rosemead Starbucks and said that the transaction this month should have no problem.

<u>Overt Act No. 20</u>: On or about December 9, 2010, at the Rosemead Starbucks, defendant LEE met the CS and the UC to discuss the upcoming money laundering transaction and the UC told defendant LEE that his money was from drugs.

<u>Overt Act No. 21</u>: On or about December 9, 2010, at the Rosemead Starbucks, defendant LEE asked that a different name be used for the cashier's check in each transaction.

<u>Overt Act No. 22</u>: On or about December 9, 2010, at the Rosemead Starbucks, defendant LEE agreed to do a transaction for $25,000 on December 20 and said that he would use the money in his own account for the cashier's check, instead of depositing the CS's cash immediately, and that with 38 accounts, he could deposit the cash slowly.

Overt Act No. 23: On or about December 9, 2010, at the Rosemead Starbucks, defendant LEE said that the fee would be 10 percent because he had to pay his guys.

Overt Act No. 24: On or about December 9, 2010, at the Rosemead Starbucks, defendant LEUNG arrived at the meeting between defendant LEE, the CS, and the UC, and the CS told defendant LEUNG that he and the UC had a lot of drug suppliers, but that the CS only touched the money business.

Overt Act No. 25: On or about December 9, 2010, at the Rosemead Starbucks, defendant LEE said that he wanted to do at least one transaction every month.

Overt Act No. 26: On or about December 9, 2010, at the Rosemead Starbucks, defendant LEE said that they would meet at the East West Bank branch next to his office, because the manager of the branch was his friend.

Overt Act No. 27: On or about December 10, 2010, in a telephone conversation with the CS, defendant LEE said that if defendant TAN did any deals behind defendant LEE's back, defendant LEE would beat him up and slash him to death.

Overt Act No. 28: On or about December 20, 2010, at the East West Bank branch located at 8632 Valley Boulevard, Rosemead, California, defendant LEE went with the CS into the bank and to a teller window, where defendant LEE obtained a cashier's check in the amount of $25,000, number 637000299, with the remitter identified as "Lee, Jim," made out to "United Business Associates."

Overt Act No. 29: On or about December 20, 2010, outside the East West Bank, defendant LEE, in the presence of defendant LEUNG,

accepted two envelopes of cash from the CS, one containing $25,000 in U.S. currency and the other containing $2,500 in U.S. currency.

Overt Act No. 30:   On or about January 27, 2011, at the Rosemead Starbucks, defendant LEE asked the CS about doing a $30,000 transaction and said that one transaction per month would be okay.

Overt Act No. 31:   On or about January 27, 2011, at the Rosemead Starbucks, defendant LEE told the CS that he had $200,000 left ready for use for money laundering transactions.

Overt Act No. 32:   On or about July 15, 2011, in a telephone call between the CS and defendant LEE, defendant LEE proposed a $30,000 money laundering transaction.

## COUNT TWO

[18 U.S.C. §§ 1956(a)(3)(B), 2(a), (b)]

On or about December 20, 2010, in Los Angeles County, within the Central District of California, and elsewhere, defendant JIM SHENG LEE, also known as ("aka") "Jin Sheng Li," aka "Jimmy Lee," with the intent to conceal and disguise the nature, location, source, ownership, and control of property believed to be the proceeds of specified unlawful activity, that is, the felonious importation, receiving, buying, selling, and otherwise dealing in controlled substances punishable under a law of the United States ("drug trafficking"), knowingly conducted and caused to be conducted the following financial transaction, affecting interstate commerce, involving property represented by an authorized agent of the United States government to be proceeds of specified unlawful activity, that is, drug trafficking:

Transaction: The exchange of a cashier's check payable to United Business Associates, dated December 20, 2011, number 637000299, in the amount of $25,000, at the East West Bank, for $25,000 in cash, plus a $2,500 fee.

At the above time and place, defendants JIAN SHENG TAN, aka "Raymond," aka "Raymond Tan," and HUA LEUNG, aka "Hua Dee," aka "Ah Hua," aka "Hua Liang," knowingly and intentionally aided, abetted, counseled, commanded, induced, and procured the commission of the offense alleged above.

9

## FORFEITURE ALLEGATION ONE

[18 U.S.C. § 982(a)(1)]

1. Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States will seek forfeiture as part of any sentence, in accordance with Title 18, United States Code, Section 982(a)(1), in the event of any defendant's conviction under any of Counts One and Two of this Indictment.

2. Each defendant so convicted shall forfeit to the United States the following property:

   a. all right, title, and interest in any and all property, real or personal, involved in any such offense, and any property traceable thereto; and/or

   b. a sum of money equal to the total value of the property described in paragraph 2(a).

3. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), each defendant convicted under any of Counts One and Two of this Indictment shall forfeit substitute property, up to the value of the total amount described in paragraph 2, if, as the result of any act or omission of said defendant, the property described in paragraph 2, or any portion thereof, cannot be located upon the exercise of due diligence; has been transferred, sold to, or deposited with a third party; has been placed beyond the jurisdiction of the court; has been substantially diminished in value; or has been commingled with other property that cannot be divided without difficulty.

4. Each of the defendants convicted under any of Counts One and Two of this Indictment shall be jointly and severally liable for any forfeiture ordered as a result of such conviction.

A TRUE BILL

/S/

Foreperson

EILEEN M. DECKER
United States Attorney

LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division

ELIZABETH R. YANG
Assistant United States Attorney
Chief, Violent and Organized
Crime Section

KAREN I. MEYER
Assistant United States Attorney
Violent and Organized Crime
Section

ANDREW L. CREIGHTON
Trial Attorney
Organized Crime & Gang Section
Criminal Division